WEISNER et al. v. MISSOURI, K. & T. RY. CO. OF TEXAS.

(Court of Civil Appeals of Texas. Texarkana. Jan. 22, 1914. Rehearing Denied Feb. 5, 1914.)

1. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.

Giving an instruction on contributory negligence, not only wrong, but when the issue was not raised by the pleadings or evidence, was harmless; practically the only question under the evidence being whether death was from disease or the claimed injury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

2. APPEAL AND ERROR (§ 1048*) — HARMLESS ERROR—EVIDENCE.

Permitting defendant to ask a hypothetical question, as to the cause of the condition in which witness found deceased, cannot be complained of, where his answer was not responsive and the facts he stated could not prejudice plaintiffs.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4151, 4158–4160; Dec. Dig. § 1048.*]

3. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—EVIDENCE.

Admitting, for purpose of impeaching plaintiffs' witness, a writing of what defendant's witness said was a prior statement by plaintiffs' witness taken down by defendant's witness when it was made was harmless; it

being but a reproduction of what had been testified to by other witnesses.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by Tom Weisner and others against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for defendant, and plaintiffs appeal. Affirmed.

Y. D. Harrison and Beard & Davidson, both of Marshall, for appellants. Schluter & Singleton, of Jefferson, and Alex S. Coke, of Dallas, for appellee.

HODGES, J. The appellants are the husband and children of Roxana Weisner, who died in December, 1912. They instituted this suit against the Missouri, Kansas & Texas Railway Company of Texas, the appellee, for the recovery of damages resulting from her death, claiming that this was caused by the negligence of the railway company. It is alleged in their original petition that in December, 1912, T. W. Weisner, the husband, and the deceased were passengers on the appellee's railway, traveling from Pittsburg in Upshur county to Leigh in Harrison county, Tex. They arrived at the latter station at about 4:30 o'clock in the morning, and before it was daylight. When the train stopped at the station Weisner and wife walked to the front platform for the purpose of getting off. Just as they reached the platform it is claimed that the train was suddenly and violently moved, and that this caused them to fall over against the railing and thence to the ground. It is further alleged that by reason of this fall Roxana Weisner received injuries from which she died shortly thereafter. The railway company answered by a general demurrer and a general denial only. From a verdict in its favor Weisner and his children have appealed.

Weisner testified that he and his wife boarded the train at Pittsburg and were riding in the coach set apart to colored passengers; that when the train arrived at Leigh, their destination, they arose and started to the front end of the car for the purpose of getting off; that just as they reached the platform and turned to go down the steps the engine jerked the train and threw them both against the iron railing, and thence to the ground on the outside. He says that he recovered his balance and tried to get his wife to her feet, but failed; that he called to his assistance a deaf and dumb boy, who was standing near them, and together they carried her into the waiting room, and a colored physician was later summoned to attend her. He further testified that she never spoke after the fall, and died a short time thereafter. Weisner was the only witness who testified that this accident occurred on

that occasion. He was corroborated in part by two others as to the train having moved after it stopped at Leigh and before its final departure, but he was contradicted by other witnesses as to any fall having occurred, or that the train moved. The train porter testified that he helped Weisner carry his wife out of the coach and assisted them in alighting; that the latter was sick and had to· be supported, and that they both alighted without any difficulty or unusual occurrence. Two other witnesses, the conductor and a mail agent, testified that they remembered the occasion; that they were in positions to see the parties as they got off the train; and both stated that no fall occurred, and that the train did not move after it stopped at Leigh until its final departure. There was considerable testimony introduced by the railway company tending to show that Roxana Weisner had been ill during her stay at Pittsburg, that she had been under the care of a physician, and was seriously sick at the time she left. It is contended by the appellee that her death was due to that illness, and not to any accident or injury received while alighting from the train. There was a sharp conflict between the testimony of Weisner and a number of other witnesses who testified concerning the indisposition of the deceased while at Pittsburg. He testified that his wife was in her usual good health; the others to the contrary.

[1] The first and second assignments of error complain of the definitions given by the court of the terms "very high degree of care" and "negligence." The objections urged, however, we think are without merit. Among others the court gave the following charge: "It is the duty of a person while a passenger on a train of common carriers of passengers and traveling thereon and alighting therefrom, to exercise that degree of care and prudence that a very cautious and prudent person would exercise under the same or similar circumstances. "You are instructed that the defendant railway company was not an insurer of the safety of plaintiff's wife while a passenger on its train, and it was her duty, while traveling on the train or in alighting therefrom, to use that degree of care to avoid injury to herself that a very cautious and prudent person would exercise under the same circumstances, and that a failure to use such care would be negligence on her part; and, if such negligence on her part, if any, caused or contributed to cause any injuries she may have received, if any, then plaintiffs could not recover." This charge not only announced an erroneous proposition of law regarding the care which a passenger should exercise under such circumstances, but it related to an issue that was not raised by the pleadings or the evidence. The railway company had pleaded only the general issue, and there was no evidence tending to suggest contributory negligence on the part of the deceased in any form. The appellee concedes that this charge is technically erroneous, but insists that under the circumstances it was harmless. We are inclined to believe that this contention is sound. It will be observed that the court in this charge refers to the conduct of the deceased while traveling and alighting from the train. The principal controversy on the trial seemed to be over the question as to whether or not the deceased in fact sustained a fall or any injuries from the effects of which she died; the appellee contending that her death was due to a disease from which she was suffering at the time she undertook the journey, and that no fall did in fact occur. Weisner and the porter are the only witnesses who testified as to the manner in which the parties got off the train, and neither of them stated any facts from which negligence on the part of deceased could, by any stretch of the imagination, be inferred. The witnesses introduced by the appellee testified that there was no fall, while Weisner alone says . there was. The evidence concerning the disease from which the deceased was at the time suffering indicates that it might, at any time, result in death. Practically the only question about which there was any room for difference of opinion among the jurors was as to whether the deceased died from the effects of a previously contracted disease, or from injuries sustained in a fall as detailed by Weisner. Hence the question of contributory negligence was in no way involved. To reverse the case because of the giving of this irrelevant charge would be assuming that the jurors were misled by an instruction that had no application to the real issues before them, and that they were lacking in that discretion which men of ordinary judgment would possess.

In the fifth assignment the appellants contend that the court failed to give a specific charge which is set out in their brief. A search of the record shows that no such charge was requested. There is therefore no basis for the assignment.

[2] Counsel for the appellee were permitted to ask the following hypothetical question of a physician who attended the deceased in the waiting room of the depot just after she alighted from the train: "If she [meaning the deceased] had been suffering with congestion of the bowels and stomach for several days so she could hardly breathe, and could not without making a great deal of noise and wheezing through her throat, what would you say produced the condition in which you found her?" It is sufficient, in disposing of this objection, to say that the answer given by the witness to this question was not responsive, and the facts which he did state could in no way operate to the prejudice of the appellants.

[3] The appellee was permitted, over the objection of the appellants, to read to the

jury the following written statement purporting to be a record of what Dr. Leach, a witness for the appellants, had stated to M. B. Thomas, a claim agent of the railway company, some time before the case was tried: "I am a practicing physician at Leigh, Tex. Have been since 1900. I recall being called to see Roxana Weisner early one morning in December. She was at the depot, and I was called at about 6 o'clock a. m. When I arrived at the depot I found the woman in a dying condition. I gave her a heart stimulant, but it had no effect. Weisner told me she had gotten hurt getting off the train; said when the train stopped they got up to get off, and when they were on the platform of the car the train gave a lurch and threw his wife against the iron railing around the platform of the car, striking her in the stomach. After she died I examined her and looked for an injury; there was no sign of an injury that I could find, and I attributed her condition to the shock she had received. I had known the woman and had practiced in the family ever since I have been here. She had always been a stout, healthy woman so far as I know. Neither Weisner nor any one else gave me any history of her having been sick or complaining before she reached Leigh. Her breath was very offensive. She was a woman 47 years old, and I supposed had had change of life, but when I examined her I found her menses were on her. I attribute her death to a shock; her bowels were loose." The following are the objections urged to the introduction of that statement: (1) That it is a statement prepared by the defendant and not signed by the witness Leach; (2) that each witness had testified about the conversation had, and that was all that should legitimately go before the jury; (3) that the written statement was not signed by the witness Leach; if read to the jury under the instructions of the court it would prejudice the rights of the plaintiffs; that it did not tend to prove any issues of the case, and was hearsay, irrelevant, and immaterial. The evident purpose in introducing this writing was to impeach the witness Leach, and to show that he had previously made a statement to the effect that when he examined the deceased at the depot he discovered no external evidences of injury about her person, and that there were no bruises on her body. Upon the trial he had testified that there was a bruise across her stomach. Leach had denied making the statement contained in the writing. Thomas, the claim agent, testified that he wrote down the statements made to him by Leach in the paper offered in evidence; that after completing it he read the paper over to Leach, and permitted Leach to read it for himself; that Leach admitted that it was correct, but declined to sign it because he might be a witness in the case and did not wish to do so.

Thomas further stated that the writing did contain a correct record of what Leach had told him on that occasion. The mere fact that this instrument was unsigned did not affect its admissibility. Whether or not Leach made the statements therein contained was an issue for the jury. If the statement was but a reproduction of what had already been detailed in the hearing of the jury by other witnesses, its admission was harmless, and could not justify a reversal of the case. It is not contended that no sufficient predicate was laid for the introduction of this impeaching evidence.

The judgment of the district court is affirmed.